# EXHIBIT 1

Electronically Received 04/20/2022 05:01 PM

Electronically Received 04/20/2022 05:01 PM

Andrew T. Ryan, Esq. (SBN 227700)
THE RYAN LAW GROUP
317 Rosecrans Ave.
Manhattan Beach, CA 90266
Tel: (310) 321-4800
Fax: (310) 496-1435
Andrew.ryan@theryanlawgroup.com

Attorneys for Plaintiffs

**FILED**
Superior Court of California
County of Los Angeles

**04/20/2022**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ N. Osollo _____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| NATHAN CAMPOS, an individual,<br><br>                   Plaintiffs,<br><br>         v.<br><br>DANIEL HELMHOLD, an individual, BIG FISH GAMES, INC., a Washington corporation; ARISTOCRAT LEISURE LTD, an Australian corporation, and DOES 1 THROUGH 10, inclusive;<br><br>                   Defendant. | Case No.  22STCV12112<br>Assigned to: Hon. Christopher K. Lui<br>Dept: 76<br><br>**FIRST AMENDED COMPLAINT:**<br><br>1. **Violation of California's Unfair Competition Law ("UCL")**<br>2. **Violation of California False Advertising Law ("FAL")**<br>3. **Violation of the California Consumer Legal Remedies Act ("CLRA")**<br>4. **Fraud**<br>5. **Negligent Misrepresentation**<br>6. **Unjust Enrichment**<br><br>**<u>CLASS ACTION</u>** |

        Plaintiff Nathan Campos ("Plaintiff"), individually and on behalf of all others

similarly situated, hereby brings this Class Action Complaint against Daniel Helmhold

("Helmhold"), an individual, Big Fish Games, Inc. ("Big Fish"), a Washington corporation,

and Aristocrat Leisure Limited ("Aristocrat Leisure"), an Australian corporation (collectively "Defendants"). Plaintiff alleges as follows:

## INTRODUCTION

1.      This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated individual gamers who have been deceived into making in-game purchases of deceptively marketed in-game items in the mobile application games Big Fish Casino and Jackpot Magic Slots (collectively, "Games").  Having already been found by the Ninth Circuit as has having engaged in illegal gambling operations, under the leadership of Daniel Helmhold as its VP of Growth and with the support of new parent company, Aristocrat Leisure, Big Fish has continued its deceptive business practices to continue offering casino-style games that deploy false and misleading advertising practices in an effort by Big Fish Gaming to continue preying on and illegally profiting from its consumers.  Specifically, Defendants have falsely advertised price discounts for in-game purchases to mislead and induce Plaintiff and those similarly situated into making in-game purchases.

2.      Defendant Big Fish Games is a developer of slot machine-based "Social Casino" games.  Its marquee product is Big Fish Casino. On information and belief, Big Fish Casino drives annual revenues in excess of $100 million. Through "Big Fish Casino" and "Jackpot Magic Slots," Big Fish offers electronic slot machine and other internet casino games to consumers. Consumers play Big Fish Casino and Jackpot Magic Slots on Apple iOS devices, Android Devices, and Facebook.

3.      The Ninth Circuit recently held that prior versions of Big Fish Casino "constitutes illegal gambling under Washington law." *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018).

4.      According to Defendants, Big Fish Casino is the "#1 Casino Game App." Big Fish Casino and Jackpot Magic Slots have nearly 200,000 ratings on the Apple App Store.  Big Fish Casino has over 400,000 ratings on the Google Play Store.  Jackpot

Magic Slots has nearly 200,000 ratings on the Google Play Store.

5.      On information and belief, in 2014, Churchill Downs acquired Big Fish for $885 million.

6.      On information and belief, in 2018, Churchill Downs sold Big Fish to a foreign slot machine manufacturer, Aristocrat Leisure, for approximately $990 million.

7.      On information and belief, Aristocrat Leisure Limited is an Australian gambling machine manufacturer and the parent company of Big Fish Games.

8.      Big Fish Casino and Jackpot Magic Slots are free for consumers to download and play.  Defendants reap massive profits by selling thousands of "in-app" items that range from $1.99 to $99.99.  However, in its direct marketing to consumers (including representations made at the time of purchase), Big Fish advertised false former prices to induce players into believing they must act quickly to take advantage of a limited-time sale price.

9.      Big Fish has deceived consumers by offering specific limited time "bonuses" that purported to massively discount the price of its in-game goods.  It used strikethrough pricing and statements like "SALE!" and "5.5X" alongside countdown clocks to trick consumers into believing they were benefitting from limited-time promotions that substantially increased the value of their in-game purchases.  These purported savings were false, however, because the stricken "original" pricing that these ads referenced were fabricated.

10.     These special offers and sales ran for months or longer.  But at no point, let alone within three months of the advertised discounts, were these in-game items ever actually offered at the "original" non-discounted price.  Stated differently, Big Fish never sold the in-game items at the original price that was stricken in the sales promotions.  It just offered false presentations of purported discounts from original prices that never existed, and its players bought packs on "sale."

11.     Further, the advertised "original" pricing does not reflect the prevailing

market retail pricing for these virtual in-game items, which have no real-world value and whose pricing is entirely determined by Big Fish.

12.     The Federal Trade Commission ("FTC") describes as false former pricing schemes as deceptive: "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 CFR §233.1(a).

13.     California statutory and regulatory law also expressly forbids such false discounted pricing schemes: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."  Cal. Bus. & Prof. Code §17501.

14.     Defendants knew, or should reasonably have known, that its comparative price advertising was false, deceptive, misleading, and unlawful.

15.     Defendants fraudulently concealed from and intentionally failed to disclose to Plaintiff the truth about its advertised price discounts and former prices.

16.     Through this false and deceptive marketing, advertising, and pricing scheme, Big Fish has violated California law prohibiting the advertisement of goods for sale as discounted from false former prices and prohibiting misleading statements about

the existence and amount of price reductions.

17.     The claims and issues asserted herein are governed by California state law.  The State of California has the greatest interest in policing corporate conduct occurring within the State.

18.     Plaintiff hereby seeks restitution, injunctive relief, punitive damages, attorneys' fees, and all other relief which the Court may deem appropriate.

## PARTIES

19.     Plaintiff Nathan Campos is a citizen and resident of Los Angeles County, California.  He began playing Big Fish Casino and Jackpot Magic Slots on or around February 27, 2022 having downloaded the Games from the Apple App Store in this District.  Being presented immediately with promotions for limited times sales on various in-game bundles for gold and chips, he purchased various in-game bundles in both Big Fish Games and Jackpot Magic Slots in this District, which he otherwise would not have purchased had he known about the deceptive advertising which he reasonably relied upon in making those purchases.

20.     On or about March 20, 2022, within 30 days of downloading and first logging into Big Fish Games and Jackpot Magic Slots, Plaintiff exercised his option to opt out of Defendant's dispute resolution provisions, including mandatory arbitration, choice of law and venue provisions, by providing written notice to Big Fish Games, Inc.  Plaintiff continued to make in-game purchases in the Games, which Defendant accepted, after Plaintiff sent his opt-out notice.

21.     On information and belief, Defendant Daniel Helmhold is a resides in or around San Francisco, California.

22.     On information and belief, Helmhold is the Vice President for Growth at Big Fish Games, Inc. whose responsibilities include marketing of the Games.

23.     On information and belief, Defendant Big Fish Games, Inc., is a corporation organized and existing under the laws of the State of Washington, with its

principal place of business at 906 Alaskan Way, Suite 700, Seattle, Washington 98104.

24.     On information and belief, Big Fish has a corporate office located in Oakland, California.

25.     On information and belief, Aristocrat Leisure Limited is a publicly traded Australian corporation with its principal place of business at Building A Pinnacle, Office Par 85 Epping, Road North Ryde, NSW, 2113 Australia.  On information and belief, Aristocrat Leisure is the parent company of Big Fish, Inc.

**JURISDICTION AND VENUE**

26.     This Court has subject matter jurisdiction over this class action pursuant to Code of Civ. Proc. §410.10, Bus. & Prof. Code §17204, and the California Constitution, Article VI, section 10, because this case is not given by statute to any other trial courts.

27.     Plaintiff alleges, upon information and belief, that each of the Defendants conduct professional and commercial activities in California on a substantial, continuous, and systematic basis and therefore each of the Defendants are subject to the general jurisdiction of the courts of this state.

28.     Plaintiffs further allege, upon information and belief, that the claims asserted in this complaint arise out of or are related to each of the Defendants' professional and commercial activities within California, and therefore each of the Defendants are subject to the specific jurisdiction of the courts of this state.

29.     Venue is proper in this court because at all relevant times Plaintiff resided in the County of Los Angeles, California and the claims asserted in this complaint arise out of acts, transactions, and conduct that occurred in whole or in part within the County of Los Angeles, California.  Venue is also proper in this Court because Defendants has an office in Oakland, California involved in the promotion and operation of the Games and therefore many of the alleged unlawful acts and practices alleged herein took place in California.

/  /  /

# **FACTS**

30.     Big Fish Casino and Jackpot Magic Slots are mobile application casino-style games developed and distributed by Big Fish Games, Inc. (collectively referred to herein as "Games.")  These Games are available on iPhone and Android devices through the Apple App Store and Google Play platforms, respectively.

31.     Big Fish Casino offers a variety of casino type games, including slot machines and card games, including blackjack and poker.  Users receive a certain amount of free chips for use in the Big Fish Casino when they first download Big Fish Casino and periodically when they log into the game.  Users can also purchase chips and gold for use in the Big Fish Casino games through the virtual store.

32.     Jackpot Magic Slots offers a variety of virtual slot machine games.  Users receive a certain amount of free chips to play the slot machine games when they first download Jackpot Magic Slots and periodically when they log into the game.  Users can also purchase virtual gold coins for use in the Jackpot Magic Slots games through the virtual store.

33.     Once players have exhausted their free chips or gold in the Games through the Games' various casino-style games, their only viable option to continue playing on a given day is to purchase additional chips from the virtual stores offered by the Games.  Users can purchase bundles of in-game chips or gold ranging in price from $1.99 to $99.99.

34.     When a player logs into the Games, a pop-up advertisement for a "sale" on chip or gold bundles often times fills the screen, prompting the player to either accept the purchase or close the advertisement by clicking "X" in the corner to continue playing the game.  This "sale" is also shown in the in-game stores of the Games.

35.     Nearly every displayed "sale" in the Games' respective stores has a countdown timer counting down the time that the "sale" is still available.  This countdown timer creates a false sense of urgency and scarcity to induce a player to

1  purchase a bundle immediately.

2      36.    The advertisement of these bundles purportedly on sale are false,

3  deceptive and intended to mislead players into making in-app purchases that they

4  otherwise would not have made.  Defendant falsely promotes these bundles as being

5  on sale or discounted by misrepresenting that such packs include limited-time bonuses

6  that purport to substantially increase the value of the bundles.

7      37.    There are two primary categories of deceptive bundle advertisements: (a)

8  bundles that are advertised by creating the illusion of chip and/or gold discounts through

9  the strikethrough graphics (referred to hereinafter as "False Strikethrough Ads") and (b)

10  bundles that are falsely advertised with a display indicating a limited time offer for a

11  purported special event (referred to hereinafter as "False Limited Time Specials").

12  Bundles may be advertised through one or both of these categories at any given time.

13  **False Strikethrough Ads**

14      38.    The False Strikethrough Ads display a small amount of chips or gold, with

15  a strikethrough line, and then in larger, bold-faced, gold colored font, a larger amount of

16  chips or gold, implying that the bundle normally contains a smaller amount of gold for

17  the same price.  For example, a $1.99 bundle may have 20,000 chips with a

18  strikethrough line over that number and display in bigger, bolder and shiny letters

19  165,000 chips.  The intended message is that the bundle typically contains 20,000 chips

20  for that price but is now being offered with 50% more chips at the same price.  An

21  example of such a display for Big Fish Casino is shown below:

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9



10    An example of such a display for Jackpot Magic Slots is shown below:
11
12
13



14
15
16
17
18
19
20
21
22    39.    There are numerous of False Strikethrough Ads used to sell bundles in the
23  Games on a daily basis.  On information and belief, these bundles never offered the
24  amount of chips or gold stricken for the displayed price.  The False Strikethrough Ads
25  applies across every price point in the Games, including the $1.99 bundles, $4.99
26  bundle, $9.99 bundle, $19.99 bundle, $49.99 bundle and $99.99 bundle.
27    40.    The higher priced bundles further include a banner indicating a
28

percentage increase of value over the purported "normal" bundle to further mislead consumers into purchasing more expensive bundles.  However, the "normal" bundle that is stricken and that provides the apparent baseline for the "+240%" representation, for example, was never offered.

41.   Defendants had actual knowledge that the False Strikethrough Ads contained false or misleading misrepresentations as to their prior values.  Big Fish Games designed and promoted these advertisements while having actual knowledge that these quantitative representations of sale values were false.

42.   These chips and gold are critical to the Games, as they are necessary for the players to continue playing the casino-style games once they inevitably lose all of their virtual chips and gold on a given day.  While players may receive a certain amount of chips or gold as daily incentives to log in or through other promotions and gameplay incentives, purchasing of chips or gold through real currency is the only way for a player to continue playing the games on a given day once their supply of free chips or gold is depleted to the Games' gambling-style gameplay.

43.   Defendants promoted these advertisements to induce players to purchase the chip and gold bundles all the while knowing that the packs contained quantitative misrepresentations with respect the value of chips and gold displayed.

44.   The amount of chips or gold included in a bundle, and whether the bundle being offered for sale represents a good value and outsized amount of chips or gold a player is receiving for his or her purchase with the corresponding bundle, is a material consideration when a player decides whether to purchase a bundle.

45.   Plaintiff and those similarly situated reasonably relied on the "strikethrough" pricing when purchasing bundles promoted through False Strikethrough Ads.  Had Plaintiff and those similarly situated known the "strikethrough" pricing was false, Plaintiff would not have purchased some or all of the bundles promoted through False Strikethrough Ads.

46.     The False Strikethrough Ads are violative of 16 CFR §233.1(a) because the former, stricken, deals displayed in the False Strikethrough Ads are not "actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time."  Rather, the False Strikethrough Ads display former bundles that are "fictitious" and with "an artificial, inflated price" for the purpose of creating the false perception to the consumer "of a large reduction."  The False Strikethrough Ads promote a false bargain where "the purchaser is not receiving the unusual value he expects."  *Id.*

47.     The False Strikethrough Ads are also violative of Cal. Bus. & Prof. Code §17501, because the former bundle and price advertised were never "the prevailing market price … within three months next immediately preceding the publication of the advertisement."  Nor do the False Strikethrough Ads "clearly, exactly and conspicuously stated in the advertisement" when such former prices were prevailing.

**False Limited Time Specials**

48.     The False Limited Time Specials misrepresent the existence of a limited-time sale whereby players can allegedly purchase more chips or gold from a pack than they normally could for the same price.  These are described as having a unique, limited time, value as compared to a non-sale time period.  This misimpression is created through words such as "Sale," "Special Sale!," "5X Sale," "VIP Bonus" and a countdown timer prominently displayed.  These False Limited Time Specials communicate to the reasonable player of the Games that the bundles contain extra chips or gold relative the normal version of the bundles during a non-sale time period.  But no such non-sale period ever exists.

49.     Other False Limited Time Specials utilize holidays or other arbitrary events to create the impression that the bundle pricing is connected to a special occasion, thereby creating a false sense of urgency in the consumer.

50.     Defendants intentionally designed the bundles and their promotion to

mislead players of the Games into believing that the bundles represented a sale value available for only a limited time, including an increase in chips and gold, to induce those players to purchase the packs.

51.     Plaintiff and those similarly situated reasonably relied on the "Sale" graphics on the False Limited Time Specials as a material consideration in purchasing the advertised bundles.  Had Plaintiff and those similarly situated known that bundles were not actually on sale in the manner represented and that there was no urgency in purchasing those bundles at the purported sale price, when would not have purchase some or all of the bundles advertised using the False Limited Time Specials.

## **APPLICABLE LAW**

52.     Plaintiff is a citizen and resident of Los Angeles County, California.  He downloaded and signed in for the first time to the Games in California on or about February 27, 2022.  On or about March 20, 2022, within 30 days of downloading and logging into Big Fish Games and Jackpot Magic Slots, Plaintiff exercised his option to opt out of Defendant's dispute resolution provisions, including mandatory arbitration, choice of law and venue provisions by providing written notice to Big Fish Games, Inc.

53.     After providing Big Fish with his notice to opt out of Big Fish's dispute resolution provisions, Plaintiff continued to make in-game purchases in the Games that Big Fish continued to accept.

54.     California's substantive laws may be constitutionally applied to the claims of Plaintiff under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

55.     On information and belief, one of two domestic offices of Big Fish Games is in Oakland, California and conducts substantial business in California.

56.     On information and belief, Helmhold, who is in charge of Big Fish's

1    marketing campaigns, lives and works in California.

2        57.    Therefore, California has an interest in regulating Defendants' conduct

3    under its laws, and to engage in the challenged conduct from and emanating out of

4    California, renders the applicability of California law to the claims herein constitutionally

5    permissible.

6        58.    The application of   California laws is also appropriate under California's

7    choice of law rules because California has significant contacts to the claims of Plaintiff,

8    and California has a greater interest in applying its laws here than any other interested

9    state.

10       59.    Should Washington law be found to apply to these claims, Washington

11   has consumer protection laws that correspond in relevant part to those in California and

12   violations of those laws are pled herein solely in the alternative and not as a concession

13   as to the applicability of Washington law to this case.  The applicability of Washington

14   law to this case, should it be applied, does not undermine the appropriateness of venue

15   in this Court.

16                          **CLASS ALLEGATIONS**

17       60.    Plaintiff brings this action individually and as a representative of all those

18   similarly situated, on behalf of the below-defined Classes:

19

20       a)    **Big Fish Casino Class:** All persons in the state of California who, within

21             the applicable statute of limitations, paid money for an in-game purchase

22             in Big Fish Casino.

23       b)    **Jackpot Magic Slots Class:** All persons in the state of California who,

24             within the applicable statute of limitations, paid money for an in-game

25             purchase in Jackpot Magic Slots.

26       61.    Excluded from the Classes are Defendants, their affiliates, parents,

27   subsidiaries, employees, officers, agents and directors.  Also excluded are any judicial

28

officers presiding over this matter and the members of their immediate families and judicial staffs.

62.     This case is appropriate for class treatment because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

63.     **Numerosity:** The members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable. The membership of the Classes is unknown to Plaintiff at this time; however, it is estimated both the Big Fish Casino Class and Jackpot Magic Slots Class number in the thousands.  The identity of such membership is readily ascertainable via inspection of Defendants' books and records or other approved methods.  Similarly, Class members may be notified of the pendency of this action by mail, email, internet postings, publications and/or in-game messaging.

64.     **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

     a.  Whether Defendant engaged in the conduct alleged in the Complaint;

     b.  Whether Defendant violated the applicable statutes alleged herein;

     c.  Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed Big Fish Casino into the stream of commerce in the United States;

     d.  Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed Jackpot Magic Slots into the stream of commerce in the United States;

     e.  Whether Defendant engaged in conduct directed to the State of California;

     f.  Whether Defendant's presentation of False Strikethrough Ads are

misleading to a reasonable consumer;

g. Whether Defendant's presentation of False Limited Time Specials are misleading to a reasonable consumer;

h. Whether Plaintiff and members of the Classes were injured and harmed directly by Defendant's false advertising designed to entice users into making in-app purchases they otherwise would not have made;

i. Whether Plaintiff and members of the Classes are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

j. Whether Plaintiffs and members of the Classes are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

65. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, Plaintiff and all Class members were comparably injured through Defendants' misconduct described above.  As alleged herein, Plaintiff, like the members of the Class, was deprived of monies that rightfully belonged to them by Defendants.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

66. **Adequacy of Representation:** Plaintiff is an adequate class representative because he is fully prepared to take all necessary steps to represent fairly and adequately the interest of the class members of the Classes, and because his interests do not conflict with the interests of other Class members he seeks to represent. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously. Plaintiff and his counsel, who are experienced class action lawyers, will fairly

1    and adequately protect the Class members' interests.

2    67.    **Superiority:** The nature of this action and the laws available to Plaintiff

3    and members of the Classes make the class action format a particularly efficient and

4    appropriate procedure to redress the violations alleged herein. If each Class member

5    were required to file an individual lawsuit, Defendants would necessarily gain an

6    unconscionable advantage since it would be able to exploit and overwhelm the limited

7    resources of each individual plaintiff with its vastly superior financial and legal

8    resources. Moreover, the prosecution of separate actions by the individual Class

9    members, even if possible, would create a substantial risk of inconsistent or varying

10   verdicts or adjudications with respect to the individual Class members against

11   Defendants, and which would establish potentially incompatible standards of conduct for

12   Defendant and/or legal determinations with respect to individual Class members which

13   would, as a practical matter, be dispositive of the interest of the other Class members

14   not parties to adjudications or which would substantially impair or impede the ability of

15   the Class members to protect their interests. Further, the claims of the individual

16   members of the Class are not sufficiently large to warrant vigorous individual

17   prosecution considering all of the concomitant costs and expenses attending thereto.

18

19                         **FIRST CLAIM FOR RELIEF**

20           **Violation of California's Unfair Competition Law ("UCL")**

21              **Cal. Bus. & Profession Code §17200 *et seq.***

22   68.    Plaintiff incorporates by reference all allegations in this Complaint and

23   restates them as if fully set forth herein.

24   69.    The UCL defines unfair business competition to include any "unlawful,

25   unfair or fraudulent" act or practice, as well as any "unfair, unfair or fraudulent" act or

26   practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. &

27   Prof. Code §17200.

28

70.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

71.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

72.    Defendants violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

73.    The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. §52(a). FTC Regulations describe false former pricing schemes-similar to Defendants' False Sale Packs and False Gold Strikethrough Packs in all material respects-as deceptive practices that would violate the FTC Act.

74.    16 C.F.R. §233.1 states:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value

he expects. In such a case, the "reduced" price is, in reality,
probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely
because no sales at the advertised price were made. The
advertiser should be especially careful, however, in such a
case, that the price is one at which the product was openly
and actively offered for sale, for a reasonably substantial
period of time, in the recent, regular course of his business,
honestly and in good faith - and, of course, not for the
purpose of establishing a fictitious higher price on which a
deceptive comparison might be based. And the advertiser
should scrupulously avoid any implication that a former
price is a selling, not an asking price (for example, by use of
such language as, "Formerly sold at $____"), unless
substantial sales at that price were actually made.

75. California law also prohibits false former pricing schemes.
Cal. Bus. Code. §17501 entitled "Value determinations; Former price
advertisements," states:

For the purpose of this article the worth or value of anything
advertised is the prevailing market price, wholesale if the
offer is at wholesale, retail if the offer is at retail, at the time
of publication of such advertisement in the locality wherein
the advertisement is published.

No price shall be advertised as a former price of any
advertised thing, unless the alleged former price was the
prevailing market price as above defined within three
months next immediately preceding the publication of the

advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

76.     California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code §1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* §(a)(13).

77.     The False Strikethrough Ads violate the unlawful prongs of the UCL since they violate 16 C.F.R. §233.1, Cal. Bus. Prof. Code §1750, Cal. Civ. Code §§1770(a)(9) and (a)(13).

78.     The False Limited Time Specials misrepresent the existence of a short-lived sale whereby players can allegedly purchase more virtual items in bundle than they normally could for the same price.

79.     Defendants' use of the False Limited Time Specials violates 15 U.S.C. §45(a)(1), 15, U.S.C. §52(a), and the FTC Guidelines published in Title 16, Code of Federal Regulations, Section 233.

80.     Defendants' use of the False Limited Time Specials also violated and continues to violate Cal. Bus. & Prof. Code §17501 and Cal. Civ. Code §1770, sections (a)(9) and (a)(13), by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months preceding the publication and dissemination of advertisements containing the false former prices.

81.     Defendants also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced "original" former price show in its False Strikethrough Ads.  In fact, Defendants displayed an arbitrary price for the goods contained in these bundles and then falsely pretended the bundles had been offered for sale at a value less than their "limited time sale" contents.

82. Additionally, Defendants violated the "unfair prong" of the UCL by falsely representing that its False Limited Time Specials contained unique, time-sensitive discounts, when, in fact, they contained the same in-game items as other packs not connected with specific sales events.

83. The gravity of the harm to Plaintiff and Class members resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, or motives that Defendants may have had for engaging in such deceptive acts and practices.

84. Additionally, Defendants violated the "fraudulent" prong of the UCL because its marketing and advertising materials included false "original" prices in its False Strikethrough Ads, and because these same materials also suggested that the offers in the False Limited Time Specials were unique, limited, and would no longer be available at those price points following the conclusion of its sale events. In actuality, the bundles never contained the "limited time" deals they purported to offer.

85. Defendants' acts and practices deceived Plaintiff and the public at large. Specifically, Plaintiff and Class members relied on these misleading and deceptive representations regarding the limited-time bonuses they could expect to receive in the packs. Each of these representations and deceptions played a substantial role in Plaintiff's and Class members' decisions to purchase the packs, and Plaintiff and Class members would not have done so in the absence of such representations.

86. As a result of these violations under each of the fraudulent, unfair, and unlawful prongs of the UCL, Defendants have been unjustly enriched at the expense of Plaintiff and members of the Classes. Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

87. Through its unfair acts and practices, Defendants improperly obtained

money from Plaintiff and Class members. As such, Plaintiff, on behalf of himself and members of the Classes, requests that this Court cause Defendants to restore this money to Plaintiff and members of the Classes, disgorge Defendants of their unjust profits and to enjoin Defendant from continuing to violate the UCL, and/or from violating the UCL in the future.  Otherwise, Plaintiff and members of the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

88.    Alternatively, if Washington law is to apply in this case, the above allegations constitute violations of Washington Consumer Protection Act RCW Chapter 19.86 entitling Plaintiff to the same remedies set forth above and below.  *See* RCW 19.86.020 (private right of action); 19.86.093 (Permanent Public Injunctive Relief Under the Washington Consumer Protection Act).

<u>SECOND CLAIM FOR RELIEF</u>

**Violation of California False Advertising Law ("FAL")**

**Cal. Business & Professional Code §17500 *et seq.***

89.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

90.    The    FAL    prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price.

91.    Furthermore, the FAL provides that: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code §17501.

92.    The False Strikethrough Ads and the False Limited Time Specials misrepresent the existence of a sale whereby players can allegedly purchase more

chips and gold from a bundle than they normally could for the same price.

93.     Through its unfair acts and practices, Defendants improperly obtained money from Plaintiff and members of the Classes. As such, Plaintiff, on behalf of himself and members of the Classes, requests that this Court cause Defendants to restore this money to Plaintiff and members of the Classes, disgorge Defendants of their unjust profits and to enjoin Defendant from continuing to violate the FAL, and/or from violating the FAL in the future. Otherwise, Plaintiff and members of the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is no granted.

94.     Alternatively, if Washington law is to apply in this case, the above allegations constitute violations of Washington Consumer Protection Act RCW Chapter 19.86 and 19.94 entitling Plaintiff to the same remedies set forth above and below.  *See* RCW 19.86.020 (private right of action); 19.86.093 (Permanent Public Injunctive Relief Under the Washington Consumer Protection Act); 19.94.390 (Price not to be misleading, deceiving, misrepresented).

## THIRD CLAIM FOR RELIEF

### Violation of the California Consumer Legal Remedies Act ("CLRA")

### Cal. Civ. Code. §1750 *et seq.*

95.     Plaintiff incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

96.     Plaintiff and each member of the Classes are a consumer within the meaning of Cal. Civ. Code §1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§1761(e) and 1770.

97.     Defendants are each a "person" within the meaning of Cal. Civ. Code §§1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§1761(b) and 1770.

98.     The Games and the in-app purchases are a "good" or "service" within the

meaning of Cal. Civ. Code. §§1761(a) and (b).

99.     Defendants violated §1770(a)(13)'s proscription against making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions by misrepresenting the existence of chip and gold discounts via False Strikethrough Ads and misrepresenting the existence of special event sales through its False Limited Time Specials.

100.     Plaintiff and members of the Classes suffered actual damages as a direct and proximate result of Defendants' actions, concealment, and/or omissions in the advertising, marketing, and promotion of its bait apps, in violation of the CLRA, as evidenced by the substantial sums Defendants pocketed.

101.     Plaintiff, on behalf of himself and members of the Classes, demands judgment against Defendant for injunctive relief and attorney's fees.

102.     Alternatively, if Washington law is to apply in this case, the above allegations constitute violations of Washington Consumer Protection Act RCW Chapter 19.86 and 19.94 entitling Plaintiff to the same remedies set forth above.  *See* RCW 19.86.020 (private right of action); 19.86.093 (Permanent Public Injunctive Relief Under the Washington Consumer Protection Act); 19.94.390 (Price not to be misleading, deceiving, misrepresented).

## FOURTH CLAIM FOR RELIEF

### Fraud

103.     Plaintiff incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

104.     Defendants represented to Plaintiff and members of the Classes that various in-game purchases were on sale in that they gave a higher amount of chips or gold than normal, that special events or "sale" versions of the bundles were significantly greater in value than their normal counterparts.

105.     These representations were false because the bundles were never offered

at the purported "normal" amount of chips or gold and the items were perpetually on "sale."

106.    Defendants designed the graphical images on the advertisements in a way that intentionally attracted Plaintiff and members of the Classes to the enticing but false claims regarding the value of in-game purchases and the existence of sales.

107.    Plaintiff and members of the Classes reasonably relied upon the claims made in the advertisements in deciding to purchase the aforementioned bundles.

108.    Upon purchasing the bundles, Plaintiff and members of the Classes were harmed because, had they known Defendants' representations were false, they would not have made those purchases.

109.    Plaintiff's and Class members' reliance on Defendants' misrepresentations in its bundle advertisements was a substantial factor in causing harm to Plaintiff and Class members.

110.    Defendants'  conduct has  therefore caused and is causing immediate and irreparable injury to Plaintiff and Class members and will continue to both damage Plaintiff and deceive Class members and the public unless enjoined by this Court.

## FIFTH CLAIM FOR RELIEF

### Negligent Misrepresentation

111.    Plaintiff incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

112.    Defendants represented to Plaintiff and Class members that various purchased bundles were on sale in that they gave a higher amount of chips and gold than normal and that special event or "sale" versions of the packs were not identical in item quantities to their normal counterparts.

113.    These representations were false because the bundles were never offered at the non-sale or special amount of chips or gold and the "sale" versions of the packs were identical to their normal counterparts.

114.    Defendants designed the graphical images on the advertisements in a way that intentionally attracted Plaintiff to the enticing but false claims regarding chip and gold amounts and the existence of sales.

115.    Defendants'  conduct has  therefore caused and is causing immediate and irreparable injury to Plaintiff, Class members and the general public and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.

**SIXTH CLAIM FOR RELIEF**

**Unjust Enrichment**

116.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

117.    By means of wrongful conduct alleged herein, Defendants knowingly misrepresented the value of virtual bundles offered for sale in the Games by comparing the value of those bundles to false or fictitious deals in a way that unfair, unconscionable, and oppressive.

118.    Plaintiff and members of the Classes conferred an economic benefit upon Defendants by paying for the in-game bundles, and Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff and member of the Classes.

119.    Plaintiff and members of the Classes would not have paid for the in-game bundles had they known those bundles were not actually on sale.

120.    Defendants accepted and retained economic benefit conferred by Plaintiff and members of the Classes under circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value.

121.    The financial benefits obtained by Defendants rightfully belong to Plaintiff and member of the Classes.  Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and member of the Classes all wrongful or inequitable proceeds of their conduct. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiff and members of the

Classes.

**<u>PRAYER FOR RELIEF</u>**

Plaintiff prays for relief and judgment against Defendant as follows:

A.  Certifying the proposed Classes defined herein;

B.  Appointing Plaintiff as Class Representative;

C.  Appointing counsel for Plaintiff as Class Counsel;

D.  Declaring Defendants' conduct to be unlawful;

E.  Awarding Plaintiff and Class members compensatory damages and actual damages in an amount to be determined by proof;

F.  Awarding Plaintiffs and Class members actual and statutory damages;

G.  For punitive damages;

H.  For civil penalties;

I.  For declaratory and equitable relief, including restitution and disgorgement;

J.  For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

K.  Awarding Plaintiff the costs of prosecuting this action, including expert witness fees;

L.  Awarding Plaintiff reasonable attorney's fees and costs as allowable by law;

M.  Awarding pre-judgment and post-judgment interest; and

N.  Granting any other relief as this Court may deem just and proper

DATED: April 20, 2022                              THE RYAN LAW GROUP

_____
Andrew T. Ryan
Attorney for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues and claims so triable.


DATED: April 20, 2022                    THE RYAN LAW GROUP

_____
Andrew T. Ryan
Attorney for Plaintiff