EMILY JOHNSON HENN (SBN 269482)
Email: ehenn@cov.com
LINDSEY BARNHART (SBN 294995)
Email: lbarnhart@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

*Attorneys for Defendants Big Fish Games, Inc., Aristocrat Leisure Limited, and Aristocrat Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

NATHAN CAMPOS,

Plaintiff,

v.

BIG FISH GAMES, INC., *et al.*,

Defendants.

Civil Case No. 2:22-cv-3959-GHW-AS

**DEFENDANTS' MOTION TO DISMISS OR TRANSFER PLAINTIFF'S SECOND AMENDED COMPLAINT**

Hearing Date: December 19, 2022
Time: 8:30 A.M.
Judge: Hon. George H. Wu
Courtroom: 9D

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 19, 2022, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable George H. Wu, United States District Court for the Central District of California, Courtroom 9D, 350 West 1st St., Los Angeles, CA, 90012, Defendants Big Fish Games, Inc. ("Big Fish"), Aristocrat Leisure Limited ("ALL"), and Aristocrat Technologies, Inc. ("ATI") (collectively, "Defendants") will, and hereby do, move to dismiss the Second Amended Complaint (Dkt. No. 24) ("SAC") of Plaintiff Nathan Campos ("Plaintiff") pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(2), and 12(b)(6), and/or to transfer the case to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a). Defendants contend that this Court lacks personal jurisdiction over ALL and ATI, that the contractual forum selection clause to which Plaintiff agreed mandates venue in King County, Washington, and that Plaintiff has failed to allege facts sufficient to state (1) any plausible claim for relief against ALL or ATI, or (2) a plausible claim under the Consumers Legal Remedies Act against any Defendant.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 2, 2022.[1] The motion is based on this Notice of Motion and Motion to Dismiss or Transfer, the attached Memorandum of Points and Authorities in Support of the Motion to Dismiss or Transfer, the Declaration of Sally Denby in Support of Defendants' Motion to Dismiss or Transfer, the Declaration of David Grossman in Support of Defendants' Motion to Dismiss or Transfer the First Amended Complaint, any additional briefing on this subject, and any such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

[1] Counsel had originally agreed to meet and confer on October 31, but rescheduled to November 2 after a conflict arose for Plaintiff's counsel.

# TABLE OF CONTENTS

INTRODUCTION ..... 1
BACKGROUND ..... 2
A. The Parties. ..... 2
1. Defendants. ..... 2
2. Plaintiff. ..... 3
B. Plaintiff's Allegations. ..... 4
LEGAL STANDARD ..... 5
ARGUMENT ..... 6
I. The Court Should Dismiss Plaintiff's Claims Against ALL and ATI for Lack of Personal Jurisdiction. ..... 6
A. ALL and ATI Are Not Subject to General Jurisdiction in California. ..... 6
B. ALL and ATI Are Not Subject to Specific Jurisdiction in California. ..... 8
C. Plaintiff Cannot Impute Big Fish's California Contacts to ALL or ATI Under an Alter Ego Theory. ..... 11
II. The Case Should Be Transferred to the Western District of Washington. ..... 12
A. Plaintiff Accepted the Big Fish Terms of Use. ..... 13
B. The Forum Selection Clause in the Big Fish Terms of Use Mandates Transfer to WDWA. ..... 14
1. Plaintiff Could Have Brought His Case in the WDWA. ..... 14
2. Plaintiff Cannot Show That the Forum Selection Clause Should Not Be Enforced. ..... 15
III. The SAC Should Be Dismissed In Part For Failure To State A Claim. ..... 17
A. The SAC Fails To State Any Claim Against ALL or ATI. ..... 17
1. Plaintiff does not allege any specific conduct by ATI or ALL on which his claims for relief are based. ..... 17
2. The SAC Fails To State a NDTPA Claim Against ALL or ATI. ..... 20
B. The SAC Fails To State a CLRA Claim Against Any Defendant. ..... 21
CONCLUSION ..... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) ....................5

*AM Tr. v. UBS AG*,
681 F. App'x 587 (9th Cir. 2017) ....................8

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
551 F.2d 784 (9th Cir. 1977) ....................5

*Anson v. Weinstein*,
2019 WL 6655260 (C.D. Cal. Mar. 26, 2019) ....................18

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5, 20

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) ....................5, 16

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ....................8

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5, 20

*Berry v. Am. Express Publ'g, Inc.*,
147 Cal. App. 4th 224 (2007) ....................21, 22

*Calvert v. Huckins*,
875 F. Supp. 674 (E.D. Cal. 1995) ....................11

*Chan v. Soc'y Expeditions, Inc.*,
39 F.3d 1398 (9th Cir. 1994) ....................15

*Coffee v. Google, LLC*,
2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ....................21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................6, 7, 8

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ........ 11

*Fairbanks v. Superior Ct.*,
46 Cal. 4th 56 (2009) ........ 22, 23

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) ........ 15

*Ferrington v. McAfee, Inc.*,
2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ........ 21

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) ........ 21, 22

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........ 13

*Indep. Elec. Supply Inc. v. Solar Installs, Inc.*,
2018 WL 3344545 (N.D. Cal. July 9, 2018) ........ 12

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........ 17

*Johnson v. UBS AG*,
860 F. App'x 531 (9th Cir. 2021) ........ 8

*Kirsopp v. Yamaha Motor Co. Ltd.*,
2014 WL 12577429 (C.D. Cal. Aug. 27, 2014) ........ 7, 10

*Lee v. Fisher*,
34 F.4th 777 (9th Cir. 2022) ........ 14, 15, 16

*Markham v. StanCorp Fin. Grp. Inc.*,
2014 WL 12599848 (C.D. Cal. Nov. 21, 2014) ........ 12

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ........ 7

*Mavrix Photo, Inc. v. Brand Tech., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........ 6

*McKee v. Audible, Inc.*,
2017 WL 4685039 (C.D. Cal. July 17, 2017) (Wu, J.) ........ 17

*MST Mgmt., LLC v. Chicago Doughnut Franchise Co.*,
LLC, 584 F. Supp. 3d 923 (D. Nev. 2022) ........ 20

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) ........ 5, 16

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................13

*Oberstein v. Live Nation Ent., Inc.*,
2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) (Wu, J.) ....................13

*Petersen v. Boeing Co.*,
715 F.3d 276 (9th Cir. 2013) ....................15

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................8, 11, 12

*Rimini St., Inc. v. Oracle Int'l Corp.*,
473 F. Supp. 3d 1158 (D. Nev. 2020) ....................20

*Risinger v. SOC LLC*,
936 F. Supp. 2d 1235 (D. Nev. 2013) ....................20

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................5

*SEC v. Jammin Java Corp.*,
2016 WL 6595133 (C.D. Cal. July 18, 2016) ....................12

*Smith v. Bank of Am., N.A.*,
2016 WL 7444879 (C.D. Cal. May 11, 2016) ....................18

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....................7

*Swenson v. T-Mobile USA, Inc.*,
415 F. Supp. 2d 1101 (S.D. Cal. 2006) ....................16

*Tatung Co. v. Shu Tze Hsu*,
43 F. Supp. 3d 1036 (C.D. Cal. 2014) ....................18

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ....................16

*United States v. Bennett*,
621 F.3d 1131 (9th Cir. 2010) ....................11

*Williams v. Cnty. of L.A. Dep't of Pub. Soc. Servs.*,
2016 WL 8730914 (C.D. Cal. May 2, 2016) ....................18

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ....................7

*Wiseley v. Amazon.com, Inc.*,
709 F. App'x 862 (9th Cir. 2017) ....................17

*Wixon v. Wyndham Resort Dev. Corp.*,
2008 WL 1777590 (N.D. Cal. Apr. 18, 2008) ....22

**Statutes**

28 U.S.C. § 1332(d) ....14

28 U.S.C. § 1404(a) ....5, 12, 14

Cal. Civ. Code § 1761 ....21, 22, 23

Cal. Civ. Code § 1770 ....22

**Rules**

Fed. R. Civ. P. 8 ....17

Fed. R. Civ. P. 9(b) ....17

Fed. R. Civ. P. 12(b)(2) ....5

Fed. R. Civ. P. 12(b)(6) ....5

## INTRODUCTION

As with his prior pleadings, Plaintiff's operative Second Amended Complaint ("SAC") names defendants that are not subject to this Court's personal jurisdiction, asserts claims that lack plausible supporting factual allegations, and seeks to avoid the venue in which Plaintiff contractually agreed to bring his claims.

Plaintiff filed his original complaint in California state court. After Defendants removed the action, Plaintiff asked this Court to remand the case despite overwhelming evidence of federal subject-matter jurisdiction under the Class Action Fairness Act, only to withdraw the remand motion after Defendants incurred significant costs to draft and file their opposition. *See* ECF Nos. 11, 14–16, 17. In this Court, Plaintiff has resisted Defendants' repeated attempts to crystallize the pleadings and situate the case in an appropriate venue without resort to needless motion practice. Defendants met and conferred with Plaintiff on multiple occasions over the past five months to discuss the manifest deficiencies presented in the First Amended Complaint ("FAC"), but Plaintiff refused to voluntarily amend his complaint or re-file in the appropriate venue. Once again, it was only after Defendants incurred significant costs to draft and file a motion to dismiss or transfer—making the same arguments Defendants had previewed during meet and confer—that Plaintiff voluntarily withdrew the FAC and sought Defendants' consent to amend yet again.

The Court should put an end to Plaintiff's wasteful multiplication of the proceedings in this forum and dismiss or transfer the case.

*First*, Plaintiff cannot show that this Court has personal jurisdiction over foreign Defendants Aristocrat Leisure Limited ("ALL") or Aristocrat Technologies, Inc. ("ATI"). ALL and ATI are Australian and Nevada corporations, respectively, with no relevant California presence and no alleged connection to the advertising that forms the basis for Plaintiff's claims. The mere fact that Big Fish happens to be an indirect subsidiary of ALL does not suffice to establish personal jurisdiction. Likewise, ATI is a Nevada

corporation with no California presence related to the advertising and pricing decisions at issue that could justify the exercise of personal jurisdiction.

*Second*, Plaintiff's claims are subject to the forum selection clause in the Big Fish Terms of Use that he agreed to when he first began using the Big Fish apps. That clause mandates that claims—such as these—that arise from Plaintiff's use of the apps must be heard in King County, Washington. Because Plaintiff could have brought this case in that venue, and because the contractual forum selection clause is enforceable, Plaintiff's claims against Big Fish should be transferred to the Western District of Washington.

*Third*, and in the alternative, to the extent that any of Plaintiff's claims may be heard in this Court, they should be dismissed in part for failure to state a claim. Plaintiff does not allege any facts specific to ATI or ALL that plausibly establish his entitlement to relief, instead lodging conclusory allegations against "Defendants" that fail to satisfy federal pleading requirements. In addition, Plaintiff's Nevada Deceptive Trade Practices Act ("NDPTA") claim fails because the NDTPA does not apply extraterritorially to the California conduct alleged here. And Plaintiff's Consumers Legal Remedies Act ("CLRA") claim should be dismissed as to all Defendants because the virtual items at issue here are not "goods" or "services" as defined by that statute.

## BACKGROUND

### A. The Parties.

#### 1. Defendants.

Defendant Big Fish Games, Inc. ("Big Fish") is a casual mobile gaming company that operates the social casino-style games Big Fish Casino and Jackpot Magic Slots (collectively, the "Games"; individually, a "Game"). ECF. No. 24 ("SAC") ¶ 5. The Games can be downloaded and played for free. *Id.* ¶ 11. Users also have the option to make in-game purchases of virtual "chips" and other items to enhance gameplay. *Id.* ¶¶ 106–07.

Defendant Aristocrat Technologies, Inc. ("ATI") is the parent company of Big Fish. Declaration of Sally Denby ("Denby Decl.") ¶ 4. ATI is a Nevada corporation that is headquartered in Nevada. SAC ¶ 44.

Defendant Aristocrat Leisure Limited ("ALL") is the indirect parent of Big Fish, insofar as Big Fish's parent, ATI, is wholly owned by Aristocrat International, Pty. Limited, which in turn is wholly owned by ALL. Denby Decl. ¶ 4. ALL is an Australian corporation with its principal place of business in Australia. SAC ¶ 42. ALL does not conduct business in California. Denby Decl. ¶ 3. ALL does not have any offices, employees, or other physical presence in California; it is not licensed to do business in California; and it has not designated any agents for service of process in California. *Id.*

**2. Plaintiff.**

Plaintiff Nathan Campos is a California resident who began playing the Games after "download[ing] the Games from the Apple App Store" on or around February 27, 2022. SAC ¶ 22; ECF No. 1-2, First Amended Complaint ("FAC"), at ¶ 19. When a user such as Plaintiff downloads a Game from the Apple App store and opens the Game for the first time, he is presented with a mandatory pop-up screen titled "Big Fish Terms of Use" ("TOU"). ECF No. 20-1, Declaration of David Grossman ("Grossman Decl."), at ¶ 4. The screen contains text that users must scroll through before clicking a button titled "I AGREE TO THE TERMS OF USE." *Id.* ¶ 5; Ex. C. That text informs users that "[b]y clicking the button below or continuing to access the game, you agree to the Terms of Use," and also contains two hyperlinks that take users to the complete TOU. *Id.* ¶¶ 4–5; Ex. C.

The TOU contains a binding arbitration clause that users can opt out of only by following a specified procedure.[2] *See* ECF No. 20-2, Grossman Decl. Ex. A pp. 7–8. The TOU also contain an "Applicable Law, Jurisdiction, and Venue" clause which states in relevant part:

> You and Big Fish irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts located in King County, Washington, for all disputes arising out of or relating to these Terms of Use, the subject matter of these Terms of Use, or your access to and use of any Big Fish Offering, that are heard in court (not arbitration).

*Id.* p. 7. The TOU does not permit users to opt out of this venue clause.

**B. Plaintiff's Allegations.**

Plaintiff claims that he was misled by Defendants' allegedly "false" advertising of "price discounts and sales for in-game purchases"—*i.e.*, advertising that virtual chips and other items are on "sale" when the non-"sale" price was allegedly never offered. SAC ¶¶ 1, 14. Specifically, Plaintiff alleges two forms of purportedly deceptive advertising: (1) advertising that "creat[es] the illusion of . . . discounts through [] strikethrough graphics" and (2) advertising that uses a "countdown timer" to indicate "a limited time offer for a purported special event." *Id.* ¶¶ 112–28. Plaintiff alleges that he "would not have purchased some or all" of the in-game items he purchased had he known that Defendants' pricing of in-game items had not been comparatively higher in the recent past. *Id.* ¶ 120.

Based on these allegations, Plaintiff asserts seven causes of action for "fraud," "negligent misrepresentation," and violations of California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), California's Consumers Legal

---

[2] Although Plaintiff purports to have opted out of the arbitration provision of the Big Fish TOU, SAC ¶ 23, the vast majority of putative class members did not opt out. Defendants expressly reserve their rights to move to compel arbitration of those putative class members' claims, if necessary, at the appropriate time.

Remedies Act ("CLRA"), Nevada's Deceptive Trade Practices Act ("NDTPA"), and Washington's Consumer Protection Act. SAC ¶¶ 165–336.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2): Lack of Personal Jurisdiction. It is Plaintiff's burden to make a prima facie showing of general or specific jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). To satisfy his burden, Plaintiff cannot "simply rest on the bare allegations of [his] complaint[.]" *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Rather, he is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Id.* at 787. In ruling on a jurisdictional challenge to a complaint, a court may rely on declarations and other evidentiary materials outside the complaint. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

28 U.S.C. § 1404(a): Change of Venue. Contractual forum selection clauses may be enforced through a motion to transfer under 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. D. Ct. for W.D. of Tex.*, 571 U.S. 49, 59 (2013). Courts may consider facts outside the pleadings when evaluating motions to enforce forum selection clauses. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6): Failure to State a Claim. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts cannot be "merely consistent with" liability; rather, the court must be able to "draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that does not nudge a plaintiff's claims "across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

## ARGUMENT

### I. The Court Should Dismiss Plaintiff's Claims Against ALL and ATI for Lack of Personal Jurisdiction.

Plaintiff cannot meet his burden to show that ALL and ATI are subject to personal jurisdiction in California. California's long-arm statute is coextensive with federal due process requirements, which means a defendant is not subject to personal jurisdiction in California unless the plaintiff demonstrates general or specific jurisdiction. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). The allegations in the SAC fail to make such a showing as to both ATI and ALL, and so the claims against those Defendants should be dismissed.

#### A. ALL and ATI Are Not Subject to General Jurisdiction in California.

ALL and ATI are not subject to general jurisdiction in California because neither is "at home" in California. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

General jurisdiction is only present when a corporation's contacts with the forum state are so "continuous and systematic" that it is "fairly regarded as at home." *Id.* at 137–39. A company's place of incorporation and principal place of business are considered the "paradigm bases for general jurisdiction." *Id.* at 137 (alterations and citation omitted). When those two bases are absent, general jurisdiction is found only in "exceptional" cases. *See id.* at 139 n.19.

Plaintiff does not—and cannot—allege that California is one of the two paradigm places for exercising general jurisdiction over either ALL or ATI. *See Daimler*, 571 U.S. at 137. Neither ALL nor ATI is incorporated in California, and neither has its principal place of business in California. To the contrary, as Plaintiff admits, ALL's place of incorporation and principal place of business are both in Australia, SAC ¶ 42, and ATI's state of incorporation and principal place of business are both in Nevada, *id.* ¶ 44.

Nor do Plaintiff's allegations provide any basis for finding this to be an "exceptional case" warranting the exercise of general jurisdiction beyond the paradigm fora. *See*

*Daimler*, 571 U.S. at 139 n.19. Plaintiff alleges that ALL and ATI are both at home in California simply because "Defendants" purportedly "conduct professional and commercial activities in California on a substantial, continuous, and systematic basis." SAC ¶ 97. Such conclusory allegations of conducting business within the forum state—particularly when such allegations are not even specific to ALL or ATI—are insufficient to satisfy due process requirements for general jurisdiction. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (holding that "conclusory allegations" that defendants "directed communication into" the forum state "and otherwise conducted business therein" was insufficient to satisfy due process requirements for general jurisdiction); *see also Kirsopp v. Yamaha Motor Co.*, 2014 WL 12577429, at *4 (C.D. Cal. Aug. 27, 2014) (granting motion to dismiss when assertions of general personal jurisdiction were "unsupported by facts" and did not "directly link Yamaha Japan to California, other than its relationship with subsidiary Yamaha USA").

Indeed, ALL is not even licensed to do business in California. Denby Decl. ¶ 3. Nor does it have any offices, employees, or other physical presence in California. *Id.* In the absence of these indicia, the Ninth Circuit has repeatedly declined to exercise general jurisdiction. *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (declining to exercise general jurisdiction over a foreign company that has "no offices or employees" in the forum state); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (declining to exercise general jurisdiction over a foreign company that has "no offices, staff, or other physical presence" in the forum state and "is not licensed to do business in the state").

ATI's limited alleged presence in California also does not support general personal jurisdiction in California. Plaintiff alleges that ATI "is registered in California, has an agent for service in California, has employees throughout the State of California, [and] conducts substantial business and direct activities into this District[.]" SAC ¶ 90. But "[a] corporation that operates in many places can scarcely be deemed at home in all of them[,]"

and even engaging in a "substantial . . . course of business" within a state does not suffice to establish general jurisdiction. *Daimler*, 571 U.S. at 138, 139 n.20 (finding billions of dollars in California sales and multiple in-state facilities insufficient for general jurisdiction over corporation). The "general jurisdiction inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly considered at home." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). Plaintiff does not allege that ATI's contacts with California are sufficiently pervasive when compared to ATI's out-of-state activities to justify the exercise of general jurisdiction. *See Johnson v. UBS AG*, 860 F. App'x 531, 532 (9th Cir. 2021) (finding no general jurisdiction over foreign corporation with "branch offices and employees" in California that "generate[] a significant amount of revenue"). And it is well-settled that merely being registered to conduct business, designating an agent for service in a state, or employing individuals in a state does not make a company at home for purposes of general personal jurisdiction. *See, e.g.*, *AM Tr. v. UBS AG*, 681 F. App'x 587, 589 (9th Cir. 2017); *Ranza*, 793 F.3d at 1069.

**B. ALL and ATI Are Not Subject to Specific Jurisdiction in California.**

In addition, neither ALL nor ATI is subject to specific jurisdiction in California, because this lawsuit arises solely out of Big Fish's contacts with California, *not* ALL's or ATI's contacts with the forum. Specific jurisdiction requires that a lawsuit "arise out of contacts that the defendant *himself* creates with the forum State[,]" not the contacts of the defendant's subsidiary. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted). Plaintiff must show both that (1) ALL and ATI purposely directed their activities or purposely availed themselves of the privileges of conducting activities in California; *and* (2) ALL's and ATI's activities in California gave rise to Plaintiff's lawsuit. *Id.*

Plaintiff cannot meet his burden because he does not plead, and cannot identify, any actions taken by ALL or ATI in California that gave rise to this lawsuit. The SAC alleges

a range of disparate contacts that generally fall into two categories, and are all divorced from the purported misconduct on which Plaintiff's claims are based.

*First*, Plaintiff focuses on ALL and ATI's alleged corporate links to California. Plaintiff alleges that ALL "[s]ell[s], distribute[s] and operate[s] hundreds of [physical] slot machines in California, SAC ¶¶ 53–54; "owns the United States trademark registration for many of the virtual slot machines that are in Big Fish Casino" and Jackpot Magic Slots, SAC ¶¶ 59–60; "[m]aintain[s] financial accounts that receive money, directly or indirectly, from California residents and California entities, including for revenues derived from the Games," SAC ¶ 77; and "owns and maintains an interactive website available to and accessed by California residents that directs consumers to the Games and other games published by Aristocrat," SAC ¶ 78. Separately, Plaintiff alleges that ATI "[s]ell[s], distribute[s] and operate[s] hundreds of [physical] slot machines throughout the state of California[,]" and "many . . . bear the 'Big Fish' brand[,]" SAC ¶¶ 53–54; "distributes and operates various mobile games throughout the State of California," including "Stardust Casino Slots" which "verifies the location of users in California prior to allowing users to play the game[,]" SAC ¶ 66; and "maintain[s] financial accounts that receive money, directly or indirectly, from California residents and California entities, including for revenues derived from the Games," SAC ¶ 77.

None of these allegations relate to in-game advertising in Big Fish Casino or Jackpot Magic Slots, which is the only activity at issue in the SAC. *See* SAC ¶¶ 100–128, 165–336. And none of Plaintiff's causes of action relate to physical slot machines, trademarks, advertising outside of the Games, or the Stardust Casino Slots game. Without any connection to the alleged claims, ALL's and ATI's alleged forum-related activities do not satisfy the "but for" causation test that Ninth Circuit precedent demands to establish specific jurisdiction. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("The question [is]: but for [Defendant's] contacts with the United States and California, would [Plaintiff's] claims against [Defendant] have arisen?").

*Second,* Plaintiff claims that certain ALL and ATI employees reside in California. But those allegations do not suffice to establish jurisdiction even if assumed to be true. Plaintiff's allegation that "over 25% of [ALL's] headcount is located in the United States, including California" does not even attempt to link the alleged in-forum activity of those purported employees with Plaintiff's causes of action, and can be summarily disregarded.[3] SAC ¶ 49. Similarly, the allegation that ALL employees "have attended trade shows and conferences in California to promote [ALL's] gaming machines and brands" has no connection to allegedly deceptive in-game advertising. SAC ¶ 80. Plaintiff does not allege that these employees have any connection to the Games themselves, let alone the in-game advertising at issue, or that Plaintiff attended or was influenced in any way by these shows or conferences. And finally, Plaintiff alleges "on information and belief" that ALL has "several employees in California" that are "responsible for supporting the operation of the Games[,]" although the only employee title the SAC identifies is ALL's "Chief Global Data & Analytics Officer," who is allegedly "involved, in part, in the marketing and operation of the Games." SAC ¶ 69, 72. The former allegation is conclusory and "therefore properly discounted." *Kirsopp*, 2014 WL 12577429, at *4. The latter allegation is factually inaccurate in multiple respects: *ALL* does not employ a Chief Global Data & Analytics Officer, and *ATI's* Chief Global Data & Analytics Officer is not involved in any aspect of the Games. *See* Denby Decl. ¶ 6.

As for ATI, "on information and belief," Plaintiff identifies by title only three ATI employees located in California: (1) ATI's "Chief Technology Officer," allegedly "involved, in part, in the development and operation of the Games[;]" (2) ATI's "Senior Vice President of Server Systems," allegedly "involved, in part, in the development and operation of the Games[;]" and (3) ATI's "Vice President of Digital Assets &

---

[3] In addition, the allegation is simply untrue: Aristocrat Leisure does not have any offices, employees, or other physical presence in California. Denby Decl. ¶ 3.

Workflow," allegedly "involved, in part, in the operation of the Games." SAC ¶¶ 70–71, 73. But as confirmed by sworn testimony—and as should be obvious from their titles—these employees have no connection to the development, operation, or strategy of the Games. Denby Decl. ¶ 7–9. Because none of these ATI employees had any involvement with the pricing or advertising giving rise to this lawsuit, their presence in California provides no support for the exercise of specific jurisdiction over ATI.

Lastly, the fact that Big Fish operates as a subsidiary of ALL and ATI is of no consequence. "A basic tenet of American corporate law" holds precisely the opposite: "the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). For that reason, "it almost goes without saying" that a parent does not own the assets of—and is not liable for the operations of—its wholly owned subsidiary. *United States v. Bennett*, 621 F.3d 1131, 1136–37 (9th Cir. 2010). Nor may a court, for the same reason, "obtain jurisdiction over a parent corporation by virtue of its subsidiaries' activities." *Id.* at 1137.

In short, there are no ties between ALL or ATI and this forum that relate to or gave rise to this lawsuit, and so Plaintiff cannot show specific personal jurisdiction.

### C. Plaintiff Cannot Impute Big Fish's California Contacts to ALL or ATI Under an Alter Ego Theory.

In the absence of general or specific jurisdiction over a parent company, as here, some plaintiffs have resorted to a so-called alter ego exception to impute the subsidiary's contacts with a forum state to the parent. *See Ranza*, 793 F.3d at 1070. Departing from the rule of corporate separateness for jurisdictional purposes is an "extreme remedy" permitted only in "exceptional circumstances." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995). To depart from that rule under the alter ego exception, the plaintiff must make a prima facie showing that (1) "there is such unity of interest and ownership that the separate personalities of the two entities no longer exist" and (2) "failure to disregard their

separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (alterations omitted).

Plaintiff does not allege any facts to support an alter ego theory of jurisdiction. Indeed, Plaintiff does not even allege the "conclusory allegations" that courts have repeatedly held "are insufficient to support personal jurisdiction under an alter ego theory." *Indep. Elec. Supply Inc. v. Solar Installs, Inc.*, 2018 WL 3344545, at *8 (N.D. Cal. July 9, 2018) (granting motion to dismiss for lack of personal jurisdiction based on allegations that "echo" the alter ego test "without providing specific facts in support"); *Markham v. StanCorp Fin. Grp. Inc.*, 2014 WL 12599848, at *5 (C.D. Cal. Nov. 21, 2014) (granting motion to dismiss for lack of personal jurisdiction based on "allegations [that] are too conclusory to yield an alter ego relationship between [the parent] and its subsidiary"). And so he cannot rely on such a theory now. *See SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *12 (C.D. Cal. July 18, 2016) (declining to consider "[m]any of the facts" the plaintiff offered in support of an alter ego theory of jurisdiction because they "are not actually alleged in the Complaint").

## II. The Case Should Be Transferred to the Western District of Washington.

Plaintiff's claims are subject to a contractual forum selection clause mandating that any claims arising from Plaintiff's use of Big Fish Casino and Jackpot Magic Slots be heard in King County, Washington. Because Plaintiff's claims against Big Fish could have been brought in that venue,[4] and because Plaintiff cannot carry his heavy burden to show that this clause is invalid or otherwise unenforceable, the Court should transfer those claims to the U.S. District Court for the Western District of Washington ("WDWA") pursuant to 28 U.S.C. § 1404(a).

---

[4] Washington courts lack personal jurisdiction over ALL and ATI for the same reasons this Court lacks personal jurisdiction over ALL and ATI, and so Plaintiff could not have brought his claims against ALL or ATI in that venue either. *See supra* Section I.

### A. Plaintiff Accepted the Big Fish Terms of Use.

Plaintiff is bound by the forum selection clause in the Big Fish TOU because he affirmatively accepted those TOU when he began playing the Games. When Plaintiff downloaded the Games, he was presented with a pop-up screen titled "Big Fish Terms of Use." Grossman Decl. ¶ 6. Plaintiff had to scroll through this notification—which contained multiple hyperlinks to the TOU—and then click a button stating "I AGREE TO THE TERMS OF USE." *Id.* ¶¶ 4–5. The notification also contained text informing Plaintiff that "[b]y clicking the button below or continuing to access the game, you agree to the Terms of Use." *Id.*

Courts regularly uphold the validity of forum selection clauses agreed to using a similar "clickwrap" procedure. *See Oberstein v. Live Nation Ent., Inc.*, 2021 WL 4772885, at *6 (C.D. Cal. Sept. 20, 2021) (Wu, J.) ("[I]n this Circuit, courts have 'consistently enforced' arbitration clauses contained in TOUs on websites with similar designs to that of the Defendants."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (enforcing similarly presented TOU); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (noting that courts enforce consumer agreements "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound" and collecting cases).

Plaintiff does not contest that he accepted the TOU when he began playing the Games. Instead, Plaintiff contends that he successfully "opted out" of the forum selection clause. SAC ¶ 93. Such contention is belied by the plain language of the TOU to which Plaintiff agreed, which does not permit Plaintiff to unilaterally decide that certain clauses don't apply to him. The only clause that can be "opted out of" is the binding arbitration clause, via the prescribed procedure. Grossman Decl. Ex. A p. 7–8.

### B. The Forum Selection Clause in the Big Fish Terms of Use Mandates Transfer to WDWA.

The forum selection clause in the TOU to which Plaintiff agreed requires that Plaintiff and Big Fish "irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts located in King County, Washington" for "all disputes arising out of or relating to these Terms of Use, the subject matter of these Terms of Use, or your access to and use of any Big Fish Offering, that are heard in court (not arbitration)." Grossman Decl. Ex. A p. 7. That forum selection clause must be "given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 62–63. Specifically, the forum selection clause controls so long as (1) the action might have been brought in WDWA, 28 U.S.C. § 1404(a); unless (2) Plaintiff meets his "heavy burden" of showing that (a) the clause is invalid due to "fraud or overreaching," (b) trial in the transferee forum would be "gravely difficult," or (c) enforcement of the clause would contravene a strong public policy. *Lee v. Fisher*, 34 F.4th 777, 780, 782 (9th Cir. 2022).

#### 1. Plaintiff Could Have Brought His Case in the WDWA.

There is no doubt that Plaintiff's claims against Big Fish "might have been brought" in the WDWA, where Big Fish and Plaintiff agreed to litigate any disputes not subject to arbitration. *See* Grossman Decl. Ex. A p. 7 (selecting "the state or federal courts located in King County, Washington" as the venue for claims such as these); https://www.wawd.uscourts.gov/about (WDWA embraces King County). All of the requirements for bringing suit in the WDWA are satisfied.

*First*, the WDWA has subject matter jurisdiction under 28 U.S.C. § 1332(d) for the same reasons described in Defendants' notice of removal (ECF No. 1): the case is a proposed class action with over $5 million is in controversy, over 100 proposed class members, and minimal diversity between plaintiff (a citizen of California) and Big Fish (a citizen of Washington). *See* FAC ¶¶ 19, 23; *see also* ECF No. 17 (Plaintiff's notice of withdrawal of motion to remand purporting to challenge CAFA jurisdiction).

*Second*, the WDWA has personal jurisdiction over Big Fish. In the forum selection clause, Big Fish "irrevocably consent[ed] to the exclusive jurisdiction" of the WDWA, *see* Grossman Decl. Ex. A p. 7, and "a forum selection clause alone [can] confer personal jurisdiction," *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir. 1994).

*Finally*, venue is proper in the WDWA. Plaintiff's claims clearly fall under the forum selection clause in the TOU, which covers "all disputes arising out of or relating to these Terms of Use, the subject matter of these Terms of Use, *or your access to and use of any Big Fish Offering*[.]" Grossman Decl. Ex. A p. 7 (emphasis added). "Big Fish Offerings" is defined to include Big Fish's applications, services, and products, and Plaintiff's complaint undeniably arises from his use of two of those applications: Big Fish Casino and Jackpot Magic Slots. *See id.* p. 1; *see also Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (holding that consumer-protection claims regarding alleged misrepresentations to students fell within the scope of an arbitration clause governing "any dispute arising from my enrollment at Heald College").

### 2. Plaintiff Cannot Show That the Forum Selection Clause Should Not Be Enforced.

Because this case could have been brought in the judicial district specified in the parties' agreement, the case must be transferred unless Plaintiff can show that the clause is invalid due to fraud or overreaching, trial in the WDWA would be "gravely difficult," or the clause contravenes a strong public policy. *Lee*, 34 F.4th at 780. Plaintiff will be unable to meet this "heavy burden." *Id.* at 782.

*First*, there is no basis to invalidate the clause due to fraud or overreaching. *Id.* at 780. To do so, Plaintiff must show specifically that "the *inclusion of that clause in the contract* was the product of fraud or coercion." *Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013). The SAC includes no allegations to that effect. Moreover, Plaintiff cannot rely on any alleged adhesive aspect of the contract, or Big Fish's corporate status,

to show overreaching. *See Murphy*, 362 F.3d at 1141 ("[A] differential in power or education on a non-negotiated contract will not vitiate a forum selection clause.").

Nor would any argument that the forum selection clause is unconscionable have merit. Courts in the Ninth Circuit regularly enforce forum selection clauses, including in consumer contracts of adhesion. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016) ("California appellate courts have . . . enforced forum selection clauses in adhesion contracts"). Furthermore, none of the traditional bases for substantive unconscionability are present here. *Compare Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 125 (2000) (lack of mutuality in agreement can render provision unconscionable) *with* Grossman Decl. Ex. A p. 7 ("*all* disputes arising out of or relating to" use of Big Fish Offerings will be resolved in Washington courts; "You *and Big Fish* irrevocably consent to the exclusive jurisdiction and venue") (emphasis added).

*Second*, Plaintiff cannot show that trial in the WDWA would be "gravely difficult." *Lee*, 34 F.4th at 780. Run-of-the-mill obstacles will not suffice; enforcement of the clause must be so burdensome that Plaintiff "will for all practical purposes be deprived of his day in court." *Id.* Any inconveniences surrounding travel to Washington flow directly from Plaintiff's choice to agree to the clause and should not be considered. *See Atlantic Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses").

*Third*, Plaintiff will not be able to show that the forum selection clause contravenes any "strong public policy" against transfer. *Lee*, 34 F.4th at 780. Because this inquiry focuses only on venue-related matters, Plaintiff must show why use of the WDWA *as a venue* contravenes public policy. *See Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1105 (S.D. Cal. 2006) ("The question is not whether the application of the forum's law would violate the policy of the other party's state, but rather, whether enforcement of

the forum selection agreement would violate the policy of the other party's state as to the forum for litigation of the dispute.").

Moreover, even if the Court were required to consider application of forum law, which it is not, Plaintiff could not prove that such application violates public policy. "Washington law, at least in the context of consumer protection, does not conflict with California law." *McKee v. Audible, Inc.*, 2017 WL 4685039, at *4 (C.D. Cal. July 17, 2017) (Wu, J.); *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017) ("Washington's and California's consumer protection laws and protections against unconscionable contracts appear to be substantially similar"). Plaintiff can offer no valid reason to prevent enforcement of the clause he agreed to, and the case should therefore be transferred to the WDWA.

## III. The SAC Should Be Dismissed In Part For Failure To State A Claim.

Even if the Court were to find that it has personal jurisdiction over ALL or ATI, and/or that transfer is not warranted, the SAC does not plausibly allege (1) any claims against ATI or ALL; or (2) a CLRA claim against any Defendant.

### A. The SAC Fails To State Any Claim Against ALL or ATI.

The Court should dismiss Plaintiff's claims against ATI and ALL under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) because (1) the factual allegations in the SAC do not plausibly allege that ATI or ALL had anything to do with the purportedly deceptive pricing at issue, let alone that they violated any law; and (2) the NDPTA does not apply to the extraterritorial conduct alleged here.

#### 1. Plaintiff does not allege any specific conduct by ATI or ALL on which his claims for relief are based.

The vast majority of Plaintiff's allegations are directed towards "Defendants" and cannot sustain claims against any individual defendant, including ALL and ATI. A plaintiff "must identify what action each Defendant took that caused Plaintiff's harm, without resort to generalized allegations against Defendants as a whole." *In re iPhone*

*Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). Accordingly, "a complaint that lumps multiple defendants together in its allegations does not satisfy the requirements of Rule 8." *Smith v. Bank of Am., N.A.*, 2016 WL 7444879, at *2 (C.D. Cal. May 11, 2016). "Conclusory allegations that an indistinguishable group of defendants essentially engaged in identical misconduct . . . are insufficient to show that plaintiff is entitled to relief from any *individual* defendant." *Williams v. Cnty. of L.A. Dep't of Pub. Soc. Servs.*, 2016 WL 8730914, at *5 (C.D. Cal. May 2, 2016). This is especially true here, where the SAC sounds in fraud and so is subject to the heightened pleading standards of Rule 9(b).[5] *See Anson v. Weinstein*, 2019 WL 6655260, at *6 (C.D. Cal. Mar. 26, 2019) (applying Rule 9(b) to "false advertising and unfair competition claims").

The allegations that *do* specifically reference ALL and ATI do not fare any better. These allegations fall into three buckets, none of which state a claim upon which relief can be based.

*First*, Plaintiff peppers the SAC with generic public statements by ALL regarding its corporate finances and its relationship with Big Fish as an indirect parent. *See, e.g.*, SAC ¶¶ 50 (ALL's market share in mobile games), 61 ("diversity" and "synergies" of ALL's various divisions), 67 (ALL's "multi-channel approach for content commercialization"), 83 (presentation discussing how "the acquisition of Big Fish 'uniquely positioned Aristocrat as a publisher with capability and applications across all product segments'"). These statements, cribbed from investor presentations and annual reports, focus solely on ALL's parent-subsidiary relationship with Big Fish and the operational strengths and weaknesses thereof. Plaintiff simply quotes the statements and

[5] The allegations are further deficient "because they are based on 'information and belief,' without providing 'the factual basis for the belief.'" *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1062 (C.D. Cal. 2014).

does not attempt to relate them to his claims. Nor can he: none of the statements discuss the specific Games at issue here, let alone any in-game pricing or advertising.

*Second*, Plaintiff alleges that ALL and ATI sell and operate physical slot machines bearing the name "Big Fish" in California as well as other mobile games "under the Aristocrat name," and that they generally "coordinate[] the cross-marketing of its various gambling brands across real world and virtual gaming platforms[.]" SAC ¶ 55; *see generally id.* ¶¶ 53–60, 65–66. Again, these claims are more notable for what they do *not* allege. The SAC does not allege that ALL or ATI participated in any of the purportedly misleading in-game advertising. Instead, the SAC attempts to implicate ALL and ATI through the fact that some "real world slot machine games" happen to share the same branding as the Games. *Id.* ¶ 56. The SAC does not allege that the "real world" slot machines feature deceptive advertising or that Plaintiff has played the machines.

*Third*, Plaintiff claims, on information and belief, that various ALL and ATI employees work in California and are "involved, in part," in the development, operation, or marketing of the Games. *See, e.g.*, SAC ¶¶ 70 (ATI's "Chief Technology Officer" "involved, in part, in the development and operation of the Games"), 71 (ATI's "Senior Vice President of Server Systems" "involved, in part, in the development and operation of the Games"), 72 (ALL's "Chief Global Data & Analytics Officer" "involved, in part, in the marketing and operation of the Games"); *see also supra* Section I.B. This case is not about the "marketing," "development," or "operation" of the Games, generally speaking. This case is about specific in-game advertisements on which Plaintiff purportedly relied. Plaintiff alleges no facts that render plausible the notion that data analysts and technology officers at parent companies are responsible for in-game advertising for two of a subsidiary's games. Plaintiff's other general and conclusory claims about employees suffer from these same defects. Even if true, the claims that "[ALL] employees have responsibility and oversight" over the "financial and accounting functions" and "legal functions" of ATI and Big Fish does not implicate ALL in the

activities at bar. SAC ¶¶ 75–76. Plaintiff's threadbare allegations do not nudge his claims against ATI and ALL "across the line from conceivable to plausible" and must be dismissed. *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–79 (a court may "draw on its judicial experience and common sense" in assessing the plausibility of plaintiff's claims).

**2. The SAC Fails To State a NDTPA Claim Against ALL or ATI.**

The Court should dismiss Plaintiff's NDTPA claim against ALL and ATI for the separate reason that the NDTPA does not apply extraterritorially.

In light of the "general presumption against applying statutes extraterritorially," courts have found that a plaintiff "cannot maintain a cause of action under the NDTPA when the challenged conduct occurred outside of Nevada[.]" *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1226 (D. Nev. 2020); *see also MST Mgmt., LLC v. Chi. Doughnut Franchise Co.*, 584 F. Supp. 3d 923, 933 (D. Nev. 2022) (finding that the "[N]DTPA does not apply extraterritorially and cannot impose liability on out-of-state defendants whose alleged wrongdoings against out-of-state plaintiffs took place outside of Nevada").

The SAC does not allege any conduct by ATI or ALL *in Nevada* on which Plaintiff's claims are based. Rather, the SAC's allegations focus on purported actions by ALL and ATI *in California*—actions which, as described above, have no bearing on the alleged causes of action. *Supra* Section I.B. Plaintiff, a California resident, has no grounds to assert a NDTPA claim against ALL, an Australian entity, based on alleged conduct outside Nevada. SAC ¶¶ 2, 22. And although Aristocrat Technologies is a Nevada corporation, Plaintiff also cannot state an NDTPA claim against ATI on the basis of alleged conduct that occurred entirely outside of Nevada's borders. *Id.* ¶ 44; *cf. Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1248–50 (D. Nev. 2013) (holding that the Nevada Wage and Hour Law did not apply extraterritorially and so could not impose

liability on in-state defendant whose alleged misconduct took place outside the state). Plaintiff's NDTPA claim against Aristocrat Leisure and Aristocrat Technologies should therefore be dismissed with prejudice.

**B. The SAC Fails To State a CLRA Claim Against Any Defendant.**

The Court should also dismiss Plaintiff's CLRA claim against all Defendants because the CLRA applies only in the context of "a transaction intended to result or that results in the sale or lease of goods or services," and the SAC does not plausibly allege that the virtual in-game items purchased by Plaintiff are either "goods" or "services." Cal. Civ. Code § 1770(a). Plaintiff's allegations on this point are entirely unchanged in the SAC as compared to the FAC, even after Defendants' previous motion to dismiss brought these deficiencies to Plaintiff's attention.

The CLRA defines "goods" as "*tangible* chattels bought or leased for use"—a definition which plainly excludes the *intangible* virtual items purchased by Plaintiff. Cal. Civ. Code § 1761(a) (emphasis added); *see Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) (dismissing CLRA claim relating to sales of computer security software because "the CLRA's express limitation of goods to 'tangible chattels' must be given meaning[.]"). Plaintiff does not allege that he purchased anything tangible. Rather, the virtual "chips and gold" allegedly purchased by Plaintiff are intangible items that may only be used in connection with the intangible online applications Big Fish Casino and Jackpot Magic Slots. SAC ¶ 108. Courts have concluded that similar virtual items are not "goods" under the CLRA. *See, e.g.*, *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (Facebook "Credits"); *Coffee v. Google, LLC*, 2021 WL 493387, at *11 (N.D. Cal. Feb. 10, 2021) (in-game "virtual currency" for video games); *cf. Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 229 (2007) ("The extension of credit is not a tangible chattel. True, a plastic credit card is tangible. But the card has no intrinsic value and exists only as indicia of the credit extended to the card holder.").

Nor does the SAC plausibly allege that the virtual items at issue here constitute "services" under the CLRA. "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). Plaintiff claims that virtual "chips and gold" allow Big Fish Casino and Jackpot Magic Slots users to "continue playing" those games, SAC ¶ 106, but courts have repeatedly held that intangible items that entitle the purchaser to subsequent privileges are not "services." For example, the *Berry* court held that even though credit cards enable users to purchase goods and services, the mere extension of that credit does not constitute a "service." 147 Cal. App. 4th at 229–30. Other courts have held that life insurance policies are not "services" under the CLRA because a policy is merely "[a]n insurer's contractual obligation to pay money," *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009), and that timeshare credits and memberships do not qualify as "services" because the credits "are like currency" and the memberships merely "provide[] . . . the right to use, occupy and enjoy [company] properties," *Wixon v. Wyndham Resort Dev. Corp.*, 2008 WL 1777590, at *4 (N.D. Cal. Apr. 18, 2008). *See also I.B.*, 905 F. Supp. 2d at 1008 (holding that Facebook "Credits" are digital items purchased "separate and apart from a specific purchase or lease of a good or service"). Big Fish's in-game virtual items similarly do not fall within the scope of the CLRA because those items do not constitute "work, labor, [or] services"—they are intangible products that can be redeemed to access other intangible products.

Plaintiff may argue that the Big Fish Casino and Jackpot Magic Slots games themselves are goods or services, but even if that were true, Plaintiff's CLRA claim would still fail. The CLRA only reaches practices in connection with "*the sale or lease* of goods or services," Cal. Civ. Code § 1770(a) (emphasis added), and Plaintiff alleges that the Games are "free for consumers to download and play[,]" SAC ¶ 11. And in any event, the Games are emphatically not "goods" or "services." The Games are just as intangible as the in-game virtual items, and they do not furnish any non-"commercial or

business" services. Cal. Civ. Code § 1761(b); *see also Fairbanks*, 46 Cal. 4th at 65 ("[A]ncillary services are provided by the sellers of virtually all intangible goods . . . . Using the existence of these ancillary services to bring intangible goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'").

The plain language of the CLRA does not encompass Plaintiff's claims relating to intangible, virtual items. Because Plaintiff cannot allege any additional facts that would change the intangible nature of the items at issue, Plaintiff's CLRA claim against all Defendants should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, (1) Plaintiff's claims against ALL and ATI should be dismissed for lack of personal jurisdiction, and (2) Plaintiff's claims against Big Fish should be transferred to the Western District of Washington; or, in the alternative, (3) all of Plaintiff's claims against ALL and ATI, and Plaintiff's CLRA claims against all Defendants, should be dismissed for failure to state a claim.

Dated: November 7, 2022

COVINGTON & BURLING LLP

By: */s/ Emily Johnson Henn*
Emily Johnson Henn

EMILY JOHNSON HENN (SBN 269482)
Email: ehenn@cov.com
LINDSEY BARNHART (SBN 294995)
Email: lbarnhart@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

*Attorneys for Defendants Big Fish Games, Inc., Aristocrat Leisure Limited, and Aristocrat Technologies, Inc.*