UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 22-3959-GW-ASx | Date | December 16, 2022 |
| Title | *Nathan Campos v. Daniel Helmhold, et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER PLAINTIFF'S SECOND AMENDED COMPLAINT [25]**

Attached hereto is the Court's Tentative Ruling on Defendants' Motion [25] set for hearing on December 19, 2022 at 8:30 a.m.

___ : ___

Initials of Preparer JG

***Nathan Campos v. Helmhold, et al.***, Case No. 2:22-cv-03959-GW-(ASx)
Tentative Ruling on Defendants' Motion to Dismiss or Transfer SAC

## I. Background

Plaintiff Nathan Campos ("Plaintiff") originally filed this class action lawsuit in California state court against Defendants Daniel Helmhold, Big Fish Games, Inc., and Aristocrat Leisure Ltd ("ALL"). Defendants subsequently removed the action to this Court. ECF No. 1. Plaintiff requested this Court to remand the action back to state court, but ultimately decided to withdraw the remand motion. *See* ECF No. 11, 14-16, 17. Plaintiff then filed a lengthy Second Amended Complaint ("SAC") that removed Defendant Helmhold as a party and added Defendant Aristocrat Technologies Inc. ("ATI"). ECF No. 24. The SAC includes allegations that Defendant Big Fish's conduct violated and/or constituted: (1) Cal. Bus. & Prof. Code § 17200, (2) Washington Consumer Protection Act RCW 19.86, (3) Cal. Bus. & Prof. Code § 17500, (4) Cal. Civil Code § 1750 et seq, (5) fraud, and (6) negligent misrepresentation. The SAC also alleges that Defendants ALL and ATI's conduct violated and/or constituted: (1) Cal. Bus. & Prof. Code § 17200, (2) Nevada Deceptive Trade Practices Act NRS 598.0915, (3) Cal. Bus. & Prof. Code § 17500, (4) Cal. Civil Code § 1750 et seq, (5) fraud, and (6) negligent misrepresentation.

Before the Court now is Defendants' Motion to Dismiss or Alternatively to Transfer ("Mot."). ECF No. 26. Plaintiff filed an Opposition to the Motion ("Opp."). ECF No. 27. Defendants filed a Reply in support of the Motion ("Reply"). ECF No. 28.

## II. Legal Standard

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a matter for "lack of jurisdiction over the person." When a defendant moves to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to establish the court's personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The plaintiff may meet this burden by making a "prima facie showing of jurisdictional facts." *Id.* (quotation omitted). "Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted). "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (quotation

omitted). However, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation omitted).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Under California law, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. § 410.10. A court may exercise personal jurisdiction over a nonresident defendant consistently with due process only so long as there exist "minimum contacts" between the defendant and the forum, such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotations omitted).

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8 & 9 (1984). A defendant is present "generally" in the forum when its activities in the state are "substantial" or "continuous and systematic." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quotation omitted). Where general jurisdiction does not exist, the Ninth Circuit has established a three-factor test to evaluate whether the court may exercise specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).

The Supreme Court recently clarified the rationale of the specific-jurisdiction framework, stating that unlike general jurisdiction, specific jurisdiction:

> covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." [*Burger King*, 471 U.S. at 475]. The defendant, we have said, must take "some act by which it purposefully avails itself of the privilege

> of conducting activities within the forum State." [*Hanson v. Denckla*, 357 U.S. 235, 253 (1958)]. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." [*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)]. They must show that the defendant deliberately "reached out beyond" its home – by, for example, "exploiting a market" in the forum State or entering a contractual relationship centered there. [*Walden*, 571 U.S. at 285]. Yet even then – because the defendant is not "at home" – the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. [*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *see, e.g.*, *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales*, 466 U.S. at 414; *International Shoe*, 326 U.S. at 319]. Or put just a bit differently, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." [*Bristol-Myers*, 137 S.Ct., at 1780].

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (cleaned up).

The plaintiff bears the burden of establishing the first two prongs; otherwise there is no personal jurisdiction established in the forum state. *Id.* If the plaintiff succeeds on the first two prongs, then the defendant must present a compelling case as to why exercising jurisdiction would be unreasonable. *Id.*

B. Motion to Transfer Venue

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. 1404(a). In deciding a motion under Section 1404(a), courts also "must evaluate both the convenience of the parties and the various public-interest considerations . . . and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013) (internal quotations omitted); *see also* 28 U.S.C. § 1404(a). Although Section 1404(a) only expressly defines three factors – the convenience of the parties, the convenience of witnesses, and the interest of justice – the Ninth Circuit has noted that district courts may consider other public and private interest factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law,

> (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). In addition, a district court may consider factors including (10) relative court congestion, (11) "the local interest in having localized controversies decided at home," and (12) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quotations omitted). "Although section 1404(a) sets no limit on the time at which a transfer motion may be made, the passage of time is a factor to be considered." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 500 (C.D. Cal. 1981).

A court has broad discretion to decide a motion to transfer venue because the analysis is "flexible and individualized." *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The moving party bears the burden in demonstrating that transfer is appropriate. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005).

## III. Discussion

### A. Motion to Dismiss Defendants ALL and ATI for Lack of Personal Jurisdiction

#### *1. General Jurisdiction*

The Supreme Court has held that a corporation may be subject to general jurisdiction in a state only if its contacts with that state are so "continuous and systematic" that it is "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Defendant ATI is the parent company of Defendant Big Fish. *See* Declaration of Sally Denby ("Denby Decl."), ECF No. 25-1, ¶ 4. ATI is a Nevada corporation that is headquartered in Nevada. SAC ¶ 44. Defendant ALL is the indirect parent company of Defendant Big Fish. Denby Decl. ¶ 4. ALL is an Australian corporation with its principal place of business in Australia. SAC ¶ 42. Thus, there is no general jurisdiction over Defendants ATI or ALL on grounds that they are incorporated or have their principal places of business in California. While Plaintiff has alleged that Defendants "conduct professional and commercial activities in California on a substantial, continuous, and systematic basis," SAC ¶ 97, Plaintiff does not contend that this Court has general

jurisdiction over ALL or ATI. Opp. at 12.

In light of above, neither Defendant ATI nor Defendant ALL has been established to be subject to general jurisdiction here in the state of California. Thus, the Court finds that it does not have general jurisdiction over ALL or ATI.

2. *Specific Jurisdiction*

a. Purposeful Availment

The first specific jurisdiction factor requires Plaintiff to demonstrate that Defendants either purposefully availed themselves of the privilege of conducting activities in California, or purposefully directed their activities toward California. *See Schwarzenegger*, 374 F.3d at 802. As observed in *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021):

> Our analysis under the "purposeful availment or direction" prong of the specific jurisdiction test turns on the nature of the underlying claims. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). We generally focus our inquiry on purposeful availment when the underlying claims sound in contract and on purposeful direction when they arise from alleged tortious conduct committed outside the forum.

Plaintiff simply asserts that ALL and ATL have substantial contacts with California and "have purposefully availed themselves of the privilege of conducting activities" in the state. Opp. at 12. Defendants do not seem to contest that they have purposefully availed themselves of California through their contacts with the state. Mot. at 8. Instead, Defendants contest whether such contacts give rise to this litigation. *Id.* at 8-11. Upon review of the SAC, the Court finds that Plaintiff has sufficiently established that ALL and ATI, through their contacts with California, have purposefully availed themselves of this forum. *See* SAC ¶¶ 53-54, 59-60, 77-78.

b. Claim Arising Out of Contacts with the Forum

The second specific jurisdiction factor requires Plaintiff to demonstrate that its claims "arise out of or relate to" the Defendants' contacts with California. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and brackets omitted).

Whereas Plaintiff contends that his claim against ALL and ATI arise out of ALL and ATI's

contacts with California, Defendants disagree. Specifically, Defendants argue that none of Plaintiff's allegations about ALL and ATI's contacts with California relate to in-game advertising in Big Fish Casino or Jackpot Magic Slots, which is the only activity at issue in the SAC. SAC ¶¶ 100-128, 165-336.

In the SAC, Plaintiff alleges that ALL and ATL "sell, distribute and operate hundreds of slot machines throughout the State of California." SAC ¶ 53. Plaintiff also alleges that ALL owns the U.S. trademark registration for many of the virtual slot machines that are in the Big Fish Casino. *Id.* ¶¶ 59-60. ALL and ATI "distribute and operate various mobile games" throughout the State of California. *Id.* ¶ 65. ALL and ATL "maintain financial accounts that receive money, directly or indirectly, from California residents and California entities." *Id.* ¶ 77. Finally, Plaintiff alleges that ALL "owns and maintains an interactive website available to and accessed by California residents that directs consumers to the Games and other games published by" ALL. *Id.* ¶ 78. Plaintiff also claims that some of ALL and ATI employees reside in California.[1] *Id.* ¶ 49. Plaintiff contends that these allegations establish that both ALL and ATI engaged in conduct relating to the distribution, operation, content, monetization, and promotion of the Games in California. Opp. at 13.

The Court begins by noting that the allegations above do support that ALL and ATI have sufficient contacts with the California. The dispute, however, is whether Plaintiff's claims against ALL and ATI arise out of these contacts. Plaintiff's Opposition fails to substantively address whether the contacts it has alleged specifically give rise to its deceptive conduct and false advertising claims against Defendants ALL and ATI. Defendants argue that Plaintiff seeks to assert specific personal jurisdiction over ALL and ATI for the activities of their subsidiary Big Fish.[2] Mot. at 4. Specifically, Defendants contend that Plaintiff oversaw and supported[3] Big Fish's conduct, which forms the basis of Plaintiff's claims.

Upon review of the allegations, it is not clear to the Court how ALL and ATI are alleged

---

[1] The Court notes that the residence of some employees in no way links the alleged in-forum activity to the conduct giving rise to Plaintiff's claims. Without any allegation that these California resident employees were directly involved in the deceptive in-game advertising, such allegations are irrelevant to the specific jurisdiction analysis here.

[2] The Court notes that the SAC alleges that Defendant Big Fish is the developer of the slot-machine based games at issue in this case. SAC ¶ 5.

[3] Specifically, Plaintiff alleges that ALL and ATI's "marketing, publishing, operational support, approval of and profiting from the Games' use of the False Strikethrough Ads and False Limited Time Specials" violated the UCL. SAC ¶ 244.

to have been directly involved in Big Fish's alleged misconduct that forms the basis for Plaintiff's claims.[4] Most of the factual allegations in the SAC relate to improper in-game advertisements, and related unfair conduct, disseminated by Big Fish through the games Big Fish Casino and Jackpot Magic Slots. SAC ¶ 100-126. Plaintiff makes conclusory allegations about alleged coordination and oversight ALL and ATL had over Big Fish's operations, promotions, and marketing decisions. Unfortunately, Plaintiff provides no specific, factual support for these statements. It appears that Plaintiff makes specific factual allegations about improper conduct by Big Fish and then attempts to simply associate such conduct to ALL and ATI through conclusory allegations about parent company oversight of operational, marketing, and promotional decisions. *Markham v. StanCorp Fin. Grp. Inc.*, 2014 WL 12599848, at *5 (C.D. Cal. Nov. 21, 2014) (granting motion to dismiss for lack of personal jurisdiction based on "allegations [that] are too conclusory to yield an alter ego relationship between [the parent] and its subsidiary"). But this is insufficient. Plaintiff makes no specific showing that ALL and ATI had complete control over Big Fish's corporate decisions, let alone that such decisions are directly linked to the conduct underlying Plaintiff's claim. If Plaintiff wishes to import Big Fish's alleged misconduct to ALL and ATI, then Plaintiff must allege significantly more than it has here.

Further, a parent company must have substantial control over its subsidiary such that the subsidiary's actions can be attributed to the parent. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015 (9th Cir. 2017) (stating that to find an agency relationship for purposes of imputing contacts "the parent company must have the right to substantially control its subsidiary's activities"). Plaintiff has failed to allege any non-conclusory statements that ALL and ATI exercised such substantial control over Big Fish's actions such that Plaintiff's substantive allegations underlying his claim can also be attributed to Defendants ALL and ATI. There is no factual support for an alter-ego theory in the SAC.

For these reasons, the Court finds that Plaintiff has failed to substantiate that Defendants ALL and ATI's contacts with California directly give rise to Plaintiff's claims here. For this reason, the Court concludes that Plaintiff has failed to establish that this Court has personal jurisdiction over Defendants ALL and ATI for this matter. The Court grants the motion to dismiss

---

[4] For example, the alleged misconduct includes deceiving customers by offering specific limited time "bonuses" that purported to discount the price of in-game goods. Defendants would use "strikethrough pricing and statements." SAC ¶¶ 11-13. The extent of Defendants ALL and ATI's involvement in this alleged conduct is not specifically delineated, even though Big Fish is alleged to be the developer of the involved apps.

claims against ALL and ATI on this ground, but without prejudice..

c. Exercise of Jurisdiction Is Reasonable

The final specific jurisdiction factor assesses whether Defendants have demonstrated that it would be unreasonable for this Court to exercise personal jurisdiction over it. *Schwarzenegger*, 374 F.3d at 802. In that determination, the following seven factors have been considered by courts within the Ninth Circuit: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. in deciding issue." *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1079 (9th Cir. 2011).

Because the Court finds that Plaintiff failed to show that Defendants ALL and ATI's contacts with California directly gave rise to Plaintiff's claims in this matter (*i.e.*, this Court does not have personal jurisdiction over said Defendants), the Court does not assess whether the exercise of jurisdiction would be reasonable in this case.

B. Motion to Transfer

In cases such as this, the Supreme Court has clearly stated that "[w]hen the parties [to a contract] have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) (footnote omitted); *see also id.* ("[W]hen the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum' . . . . [t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.' For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26 (1988)). Finding that no such extraordinary circumstances existed, the Supreme Court enforced the forum-selection clause at issue in *Atlantic Marine*. As further explained by the *Atlantic Marine* Court, when there is a valid forum-selection

clause, the district court should adjust its § 1404 analysis in three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.
> . . .
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.
> . . .
> Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*Id.* at 63-65.

The Court is inclined to grant Defendant Big Fish's motion to transfer the matter to Washington. The Terms of Use ("TOU") clearly states:

> **Applicable Law, Jurisdiction, and Venue**. . .
> Any dispute between you and Big Fish arising from these Terms of Use or your use of Big Fish Offerings that is not subject to arbitration and cannot be heard in small claims court will be resolved in the state or federal courts of Washington and the United States, respectively, sitting in King County, Washington. You and Big Fish irrevocably consent to the jurisdiction of such venues.

Big Fish Terms of Use, ECF No. 20-3, Ex. B.

In order to play any Big Fish Offering, the user must click and accept these TOU. ECF No. 20-2 at 2 ("By clicking 'Accept' or otherwise accessing or using any Big Fish Offering, you agree to be bound by the Terms of Use and all terms incorporated herein by reference. If you do not agree to these Terms of Use in their entirety, you may not use any Big Fish Offerings."). Because Plaintiff clicked "I AGREE TO THE TERMS OF USE," he entered into binding contract with Big Fish. *See Oberstein v. Live Nation Ent., Inc.*, 2021 WL 4772885, at *6 (C.D. Cal. Sept. 20, 2021) (Wu, J.) ("[I]n this Circuit, courts have 'consistently enforced' arbitration clauses contained in TOUs on websites with similar designs to that of the Defendants [requiring users to

click to access the TOU].").

Given these considerations and what appears to be a valid forum-selection clause in the TOU, the Court would deem the private-interest factors to weigh in favor of the pre-selected forum, *i.e.* the Western District of Washington. The burden then falls to Plaintiff to prove that the forum-selection clause is either invalid or unenforceable. Plaintiff provides three such arguments, each of which is unavailing to the Court.

First, Plaintiff states that he did not agree to the TOU. Opp. at 18. In light of the evidence discussed above about the TOU, the Court finds that this argument – without any factual support – is unpersuasive. In fact, Plaintiff merely states that he does not remember what he saw when he first played the Games at issue. Such conclusory assertion is insufficient to contest Defendant's evidence of the TOU and the step-by-step details about how all users must agree to the TOU prior to playing the Games. *See* ECF No. 20-1.

Second, Plaintiff argues that he modified the TOU by sending an opt-out notice stating that he did not wish to be bound by the venue provisions and proposing California as an alternative venue. Opp. at 19. Unfortunately for Plaintiff, an opt-out notice sent *after* agreeing to the TOU is insufficient to support that the TOU were modified. Plaintiff accepted the TOU in their entirety when he clicked "I AGREE." Sending a post hoc letter refuting a term of the agreed upon contract does not modify that term. Thus, the Court finds that Plaintiff has not established that he successfully modified the forum selection clause of the TOU.

Finally, Plaintiff contends that the TOU terms are unconscionable. Opp. at 20. Specifically, Plaintiff argues that if only Big Fish, and not Plaintiff, can propose modifications to the TOU, then such terms are unconscionable. *Id.* Plaintiff cites no case law in support of its position that its inability to propose a modification to a TOU is unconscionable. Defendants, however, argue the case law states the opposite—a unilateral modification clause does not render the provision unconscionable. *See, e.g.*, *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) ("[T]he unilateral modification clause does not render the arbitration provision substantively unconscionable because Amazon is limited by the implied covenant of good faith and fair dealing.") (applying Washington law); *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 708, *as modified* (Apr. 26, 2013) ("[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable.")

The Court agrees with Defendants—Plaintiff have failed to adequately oppose the application of the forum selection clause in this matter. Thus, the Court would enforce the forum selection clause and transfer Plaintiff's case against Defendant Big Fish to the Western District of Washington. Because the Court is transferring the case, it will not address Defendants' arguments to dismiss for failure to state a claim.

## IV. Conclusion

Based on the foregoing discussion, the Court **GRANTS** the motion to dismiss for lack of personal jurisdiction as to Defendants ALL and ATI, without prejudice, and **GRANTS** the motion to transfer this action to the Western District of Washington.